UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JEFFREY ALLEN ROWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 3:10cv249 |
| | ) |
| HOWARD MORTON and | ) |
| PAMELA BANE, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the court on a motion for partial summary judgment filed by the plaintiff, Jeffrey Allen Rowe ("Rowe"), on August 26, 2011. The defendants, Howard Morton ("Morton") and Pamela Bane ("Bane"), filed their response on February 3, 2012. Rowe filed a brief in support of his motion on February 27, 2012, and filed his declaration in support on this same date. On March 5, 2012, Rowe filed a "Notice of Additional Material Facts".

On February 2, 2012, the defendants filed a cross-motion for summary judgment. Rowe's response was filed on February 27, 2012, to which the defendants replied on March 16, 2012. Rowe filed a sur-reply on March 26, 2012.

For the following reasons, Rowe's motion for partial summary judgment will be denied, and the defendants' motion for summary judgment will be granted.

### Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56( c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is considered material if it is essential to a party's claim

and may affect its ultimate result. Id. at 323; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Unless there is sufficient evidence upon which a reasonable fact finder could rule in favor of the non-moving party, summary judgment is appropriate. Id. at 249.

Further, if the nonmoving party fails to establish an essential element of his case, summary judgment is appropriate. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23; see Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990). Once a moving party indicates there is no issue of material fact, the non-moving party must counter this assertion by going "beyond the pleadings" and setting forth specific facts and evidence which demonstrate "the existence of a genuine, material, triable issue." Green v. White, 17 F.3d 199, 202 (7th Cir. 1994). A non-moving party's subsequent failure or inability to prove such elements "renders all other facts immaterial" and is ultimately fatal to the claim. Id. (citing Celotex, 477 U.S. at 323).

## Discussion

At all times relevant to his Section 1983 complaint, Rowe was an inmate at the Indiana State Prison ("ISP") in Michigan City, Indiana. Rowe was assaulted by another inmate (Offender Chano) while at ISP, whom he claims threw boiling hot water on him through the bars of his cell. Rowe claims that he asked to be put in protective custody prior to the assault and that the defendants were deliberately indifferent to his risk of harm by failing to put him in protective

2

custody.

The court will first consider the defendants' motion for summary judgment because, if granted, it will moot Rowe's motion for partial summary judgment. The following facts are relevant to the motion. Defendant Pamela Bane ("Bane") is a Unit Team Manager at ISP. (Bane Decl. ¶ 1, 2, 6). The Unit Team Manager, among other duties, is responsible for interviewing offenders who request protective custody. (Bane Decl. ¶ 7, 8 ). Bane is not an internal investigator and cannot conduct internal or external investigations. (Bane Decl. ¶ 19). Defendant Howard Morton ("Morton") is the Executive Assistant at ISP. (Morton Decl. ¶ 6). One of Morton's responsibilities is to review classification appeals. (Morton Decl. ¶ 7). Morton is not an internal investigator and cannot conduct internal or external investigations. (Morton Decl. ¶ 15)

Prisons in general are inherently violent and dangerous places where society sends its most volatile citizens, many of whom have a propensity for violence, and ISP is no exception. (Bane Decl. ¶4; Morton Decl. ¶4). Because of the nature of the prison environment, violence is often unavoidable, even when every precaution is taken. (Bane Decl. ¶5; Morton Decl. 5). Requests for protective custody and classification appeals are taken seriously at ISP. (Bane Decl. ¶ 9; Morton Decl. ¶10).

Bane conducted an interview of Rowe related to his protective custody request on or about April 30, 2010. (Bane Decl. ¶ 10). During his protective custody interview, Rowe stated: (1) he had heard Offender McKnight was after him because of a drug debt acquired at Pendleton Correctional Facility, (2) Offender Ayon had told him that he had heard about the debt, and (3) Offender Morgan had called him a snitch and told him to get the situation straightened out. (Bane

Decl. ¶ 12). To help ensure Rowe's Safety, Bane recommended the following steps be taken: (1) she placed him in administrative segregation, (2) requested a permanent separation of McKnight and Rowe, (3) requested internal affairs continue looking into the matter, and (4) instructed that Rowe be permitted to have recreation alone, all of which were implemented. (Bane Decl. ¶ 20).

It is a normal and routine practice to place offenders who request protective custody in administrative segregation pending an investigation by internal affairs. (Bane Decl. ¶ 18). Administrative segregation is safer for offenders than general population because they come in contact with fewer offenders at a time and are escorted by staff at all times when off their housing unit. (Bane Decl. ¶ 21). The only security differences between administrative segregation and protective custody are that offenders in administrative segregation are handcuffed when being escorted off the unit and protective custody offenders are not; however, both are escorted by staff. Further offenders in administrative segregation do not come out of their cells and walk around the unit freely as protective custody offenders do. (Bane Decl. ¶ 22). Individuals are placed in administrative segregation for a variety of reasons related to the safety and security of the facility, while certain individuals on administrative segregation may be violent or have gang affiliation, violent gang members do not make up a majority, or even a plurality, of inmates in administrative segregation. (Bane Decl. ¶ 23).

The right to have recreation alone is further intended to restrict other offenders' access to an individual and further protects their safety. (Bane Decl. ¶ 24). Recreating alone may be imposed voluntarily or involuntarily for a variety of reasons related to the orderly operation of the facility. (Bane Decl. ¶ 25).

A classification appeal is an administrative process by which offenders can challenge

procedural irregularities or errors in the classification process.(Morton Decl. ¶ 8). Morton was responsible for conducting Rowe's classification appeal. (Morton Decl. ¶ 12). Conducting a classification appeal involves looking at: (1) the classification appeal form, (2) reviewing the offender's facility packet, (3) reviewing any documentation that relates to the subject matter of the appeal. This could include a Report of Classification Hearing and the determination of a classification committee. (Morton Decl. ¶ 11). Conducting a classification appeal does not involve interviewing an offender or conducting a separate investigation. (Morton Decl. ¶ 15).

In considering Rowe's classification appeal Morton looked at: (1) Rowe's Packet, which contains the majority of the documents the Department of Correction has related to a particular offender, (2) Rowe's April 27, 2010 request for protection, (3) Unit Manager Bane's Report of Classification Hearing, (4) the determination of the three member classification committee that protective custody should be denied pending investigation, and (5) the classification appeal form submitted by Rowe. (Morton Decl. ¶ 14). Rowe did not send any additional documentation for Morton to consider in the classification appeal. (Rowe Dep. 60:21-23). Based upon the documents, Morton saw no reason to reverse the decision of Bane and the three person classification committee. (Morton Decl. ¶¶ 16, 17).

No harm ever came to Rowe at the hands of Offenders McKnight, Ayon, or Morgan, and the alleged attack was related to a transferred drug debt not related to the request for protective custody. (Rowe Dep. 57:10-21) After Rowe met with Bane and was placed in administrative segregation and assigned to have recreation alone, no one threatened him until the attack alleged in the complaint. (Rowe Dep. 59:18-20). The attack alleged in the complaint was the first time an offender at the Indiana State Prison attempted to collect a drug debt from Rowe. (Rowe Dep.

5

59:2-5).

Bane believed that the actions taken in response to Rowe's request for protective custody were sufficient to protect him from the risk of harm he faced. (Bane Decl. ¶¶28, 30). Bane did not intend any harm to come to Rowe. (Bane Decl. ¶ 29). After Rowe was placed in administrative segregation, Bane did not believe Rowe was at risk of harm from anyone. (Bane Decl. ¶ 33). Morton did not believe that affirming Rowe's placement would put him at risk of harm. (Morton Decl. ¶¶ 21-22). Morton believed that the actions taken in response to Rowe's request for protective custody were sufficient to protect him from the risk of harm he faced. (Morton Decl. ¶¶ 18, 21). Morton did not intend any harm to come to Rowe. (Morton Decl. ¶ 20).

After the alleged attack, Rowe never requested to see a medical professional. (Rowe Dep. 74:3-11). Medical personnel at the prison never looked at or examined Rowe's alleged injuries. (Rowe Dep.76:1-3). Rowe's alleged burns never blistered and they fully healed. (Rowe Dep. 74:20-21; 84:5). The alleged burns were only painful for two days. (Rowe Dep. 77-13-15). The alleged burns did not leave any marks or scars. (Rowe Dep. 78:4-5).

To prevail under 42 U.S.C. § 1983, a plaintiff must establish that the defendant deprived him of a constitutionally secured right and that the defendant was acting under the color of state law. J.H. ex rel. Higgin v. Johnson, 346 F.3d 788, 791 (7th Cir. 2003). Section 1983 does not grant substantive rights; however, it provides a conduit in which to vindicate constitutionally or statutorily conferred rights. Albright v. Oliver, 510 U.S. 266, 271, citing Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). Therefore, a plaintiff must identify the constitutional right that was infringed in order to have an actionable claim under the statute. Albright, 510 U.S. at 271

citing Graham v. Connor, 490 U.S. 386, 394 (1989).

Further, the doctrine of respondeat superior does not apply. Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 615 (7th Cir. 2002). ). A defendant can be held liable under Section 1983 only for deprivations that she personally caused, either by direct action or by approval of the conduct of others—vicarious liability cannot support a Section 1983 claim. Monell v. Dep't of Social Svcs, 436 U.S. 658, 694 (1979); Moore v. Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993) (liability under Section 1983 must be based upon personal responsibility, not respondeat superior). Liability can be based only on a finding that conduct causing a constitutional deprivation occurred at the defendant's direction or with her knowledge and consent. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). In other words, the official sued "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye…." Id. (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988).

The Eighth Amendment imposes duties upon prisons and officials to provide certain humane conditions of confinement, including but not limited to taking reasonable steps to ensure the safety of inmates and providing adequate medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, "the Constitution 'does not mandate comfortable prisons,'"[and as such], "every injury suffered by one prisoner at the hands of another" [does not translate] "into constitutional liability for prison officials responsible for the prisoner's safety." Id. at 834.

In order to state a claim under the Eighth Amendment's cruel and unusual punishment clause, a plaintiff must allege facts which could prove: (1) that his injury is "sufficiently serious" to deprive him "the minimal civilized measure of life's necessities" (objective component) and (2) that the defendants in question acted with "a sufficiently culpable state of mind" (subjective

component). Id. at 834; Johnson v. Doughty, 433 F.3d 1001, 1010 (7th Cir. 2006) (citing Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). The plaintiff must also prove that the defendants acted with more than mere inadvertence or negligence in order to prevail on the theory of deliberate indifference. Billman v. Indiana Department of Correction, 56 F.3d 785 (7th Cir. 1995). To be liable for deliberate indifference, a prison official "must know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" Greeno, 414 F.3d 653, quoting Farmer, 511 U.S. at 834 (internal quotations omitted). Mere negligence or inadvertence is insufficient to state a claim for deliberate indifference; rather, that official "must consciously disregard that risk/need so as to inflict cruel and unusual punishment upon the prisoner." Johnson, 433 F.3d 1010, citing Farmer, 511 U.S. at 837-838; Higgins v. Corr. Med. Servs. of Ill., Inc., 178 F.3d 508, 511 (7th Cir. 1999).

Deliberate indifference, by its very nature, implies that the defendants involved knew of a substantial risk of serious harm to the plaintiff, yet ignored the implications of the risk. Proffitt v. Ridgway, 279 F.3d 503, 506 (7th Cir. 2002). The prison official must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference'" before he can be liable for deliberate indifference. Greeno, 414 F.3d at 653. In essence, deliberate indifference with respect to a failure to protect claim requires a total and complete disregard for an offender's safety to such an extent that it is the functional equivalent of wishing harm upon the prisoner. McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991). The defendants maintain that summary judgment should be granted in their favor because there is no evidence of "a sufficiently culpable state of mind" on the part of either defendant.

8

Rowe claims in his complaint that Bane was deliberately indifferent to the risk of harm he faced at the hands of other inmates to whom he owed a drug debt. It is undisputed that Rowe requested protective custody and informed Bane: (1) he had heard Offender McKnight was after him because of a drug debt acquired at Pendleton Correctional Facility, (2) Offender Ayon had told him that he had heard about the debt, and (3) Offender Morgan had called him a snitch and told him to get the situation straightened out. (Banes Decl. ¶ 12). It is further undisputed that no one had directly threatened Rowe. (Banes Decl. ¶ 15). Before granting Rowe's protective custody request Banes needed to confirm and validate the need, the standard practice at ISP. (Banes Decl. ¶¶ 14, 18). However, as noted, pending a full investigation by internal affairs, Banes took the following precautions to protect Rowe: (1) placed him in administrative segregation, (2) requested a permanent separation of McKnight and Rowe, (3) requested internal affairs continue looking into the matter, (4) instructed that Rowe be permitted to have recreation alone, all of which were implemented.

Following the implementation of the precautions listed above no one threatened or attempted to harm Rowe for nearly a month. (Rowe Dep. 59:18-20). Although Rowe does allege that he was eventually attacked with a hot liquid through the bars of his cell, this attack was not related to the circumstances or drug debt which had been relayed to Banes in the protective custody interview. Rowe alleges that he was attacked because of an unrelated and recently transferred drug debt which Rowe's associate, Hash, had accrued at Pendleton Correctional Facility. (Rowe Dep. 62:22-63:24). Banes had no knowledge of Offender Chano, the inmate who allegedly assaulted Rowe, or the specific drug debt that had been allegedly transferred, leaving no known risk for Bane to be deliberately indifferent to. McGill, 944 F.2d at 349; James v.

9

Milwaukee County, 956 F.2d 696, 700 (7th Cir. 1992).

However, even if general knowledge that Rowe owed a generic drug debt was sufficient to show knowledge, it still does not confer liability. A defendant is not required to avert the harm or even take the most appropriate action; a defendant is only required to "respond reasonably." Farmer, 511 U.S. at 845 ("prison officials who actually [know] of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if harm ultimately was not averted"); Doe v. Welborn, 110 F.3d 520, 524 (7th Cir. 1997)(" There is no liability under the Cruel and Unusual Punishments Clause if a prison official has responded reasonably to a risk of harm"). Banes argues that her actions were reasonable and that she believed that they would be sufficient to protect Rowe. (Banes Decl. ¶¶ 28-33). No liability exists when a defendant misjudges a situation. Owens v. Hinsley, 635 F.3d 950, 954 (7th Cir. 2011).

The fact that prison officials did not give Rowe the exact housing assignment he desired is of no consequence, as they took multiple steps to secure his safety. For obvious reasons, inmates with violent backgrounds cannot dictate their own housing assignments in prison, especially protective custody where they could be a danger to the other protectees. The undisputed fact is that administrative segregation is safer for offenders than general population because they come in contact with fewer offenders at a time, minimizing the occasions on which they can be assaulted, and are escorted by staff at all times when off their housing unit, further decreasing the risk of assault. (Bane Decl. ¶ 21). As noted, the only security differences between administrative segregation and protective custody are that offenders in administrative segregation are handcuffed when being escorted off the unit and protective custody offenders are not. (Bane

10

Decl. ¶ 21). Additionally, offenders in administrative segregation do not come out of their cells and walk around the unit freely as protective custody offenders do, potentially making administrative segregation more secure than protective custody. (Bane Decl. ¶ 21). In addition to the traditional protections given to those in administrative segregation, Rowe was given special protection by being allowed to have recreation alone, further reducing his contact with others and promoting safety. (Bane Decl. ¶ 24).

As noted earlier, Morton is the executive assistant at ISP responsible for, among other duties, reviewing classification appeals for errors below. (Morton Decl. ¶¶ 7-8). The denial of placement in protective custody was an issue which could be appealed to Morton. (Morton Decl. ¶ 9). Like an appellate judge, Morton was not responsible for conducting an independent interview or looking for new facts, his job was to look at the paper record and the decision below and determine if any error occurred. (Morton Decl. ¶¶ 11, 13, 15). In reviewing the decision Morton looked at: (1) Rowe's Packet, which contained the majority of the documents the Department of Correction has related to a particular offender, (2) Rowe's April 27, 2010 request for protection, (3) Unit Manager Bane's Report of Classification Hearing, (4) the determination of the three member classification committee that protective custody should be denied pending investigation, and (5) the classification appeal form submitted by Rowe. (Morton Decl. ¶ 14). Morton saw no error in the classification decision and further agreed that the decision made below was correct. (Morton Decl. ¶¶ 16-17). Morton believed that Rowe would be protected and that he did not face any threat of serious harm from anyone at the time of the appeal and denied his administrative appeal. (Morton Decl. ¶¶ 18-23).

In is a well established principle of §1983 jurisprudence that the denial of an

administrative remedy does not give rise to liability. George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007), citing Greene v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996). Morton's only involvement is the denial of Rowe's administrative appeal regarding his placement and the danger that it posed, and is no different from that of an individual who denies a prison grievance. Only persons who cause or participate in the constitutional violations are responsible for those violations. See Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996). Morton's only involvement is because he denied the classification appeal. (Rowe Dep. 62:16-20).

It is undisputed that a prison official who stands and watches a constitutional violation violates the Constitution himself; however a prison official who rejects an administrative complaint about the act of misconduct does not. George, 507 F.3d at 609-10. In the present case, it is undisputed that Morton's only involvement was the denial of the administrative classification appeal and the United States Court of Appeals for the Seventh Circuit has unambiguously held that "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." George, 507 F.3d at 609-10. As such, Morton under took no action which is actionable under §1983.

The defendants further argue that, even if Morton's actions were not purely administrative, he disregarded no known risk of significant harm to Rowe and acted reasonably. As an individual responsible for administratively reviewing lower classification decisions, Morton is permitted to rely upon the findings and conclusions of those officials, such as Bane, who are directly familiar with all of the facts and circumstances. This is especially true in the

instant case where Morton personally agreed with the decision made below and did not see any risk of harm to Rowe. (Morton Decl. ¶ 16-23). As noted above, Morton's reliance was not only reasonable, but logical given the added security administrative segregation brings, especially when an individual was allowed to have recreation alone and the negligible difference between administrative segregation and protective custody. Given all of the protective actions taken, Morton could not realistically have seen a threat to Rowe in his administrative segregation placement.

Rowe has filed responses to the defendants' arguments, but it is clear that he misunderstands the concept of "deliberate indifference", thereby making his arguments futile. More specifically, Rowe has not been able to meet the subjective prong of the deliberate indifference standard, i.e., by showing that either defendant acted with "a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). To be liable for deliberate indifference, a prison official "must know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005), quoting Farmer, 511 U.S. at 834. In the present case, the undisputed facts show that the defendants did not believe that after they placed Rowe on special administrative segregation that he faced any specific harm. The fact that assessment of the situation may have been incorrect has no bearing on the subjective element of the deliberate indifference standard. Owens v. Hinsley, 635 F.3d 950, 954 (7th Cir. 2011)( No liability exists when a defendant merely misjudges a situation).

Contrary to Rowe's assertions, a prison official is not required to avert harm to offenders.

Prison officials are not even required to take the most appropriate action; a prison official need only "respond reasonably" in order to avoid being labeled deliberately indifferent. Farmer, 511 U.S. at 845 ("prison officials who actually [know] of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if harm ultimately was not averted"); Doe v. Welborn, 110 F.3d 520, 524 (7th Cir. 1997)("There is no liability under the Cruel and Unusual Punishments Clause if a prison official has responded reasonably to a risk of harm"). In the present case, it is abundantly clear that both defendants took reasonable action and the fact that harm may have befallen Rowe anyway does not give rise to a constitutional violation. Accordingly, summary judgment in favor of the defendants is appropriate.

The defendants further assert that they are entitled to qualified immunity. As a general rule, government officials are immune from civil liability so long as their conduct conforms to what a reasonable person would have believed to be lawful in light of those rights clearly enumerated by statute or the Constitution. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In the event a defendant's behavior was not clearly forbidden at the time of its commission, he is assumed to lack knowledge about the conduct's possible illegality and cannot be held liable. Id.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)(citations omitted). Designed to protect government officials "from undue interference with their duties and from potentially disabling threats of liability," the doctrine of qualified immunity serves as "an immunity from suit rather than a mere defense to

liability." Purtell v. Mason, 527 F.3d 615, 621 (7th Cir. 2008) (citations omitted). Further, "the protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson, 129 S. Ct. at 815. Since qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," courts must determine whether a defendant is entitled to qualified immunity as early as possible during the proceedings. Malley v. Briggs, 475 U.S. 335, 341 (1986); Purtell, 527 F.3d at 621.

In the present case, Rowe can neither establish that the defendants' actions constituted a constitutional violation nor prove that the right to protective custody as opposed to administrative segregation on demand was clearly established at the time of the incident. Upon learning of the alleged risk to Rowe. Bane looked into the allegations and took extensive measures to ensure Rowe's safety, while Morton conducted an administrative review of Rowe's paperwork and affirmed Bane's decision There is nothing about these actions which equate to a violation of the Eighth Amendment. Even if this court were to determine that some aspect of the defendants' behavior was unconstitutional, offenders do not have a clearly established right to comfortable prisons devoid of all incidents of violence or to choose the manner in which they are housed when they create conflicts with those with whom they are confined. Farmer, 511 U.S. at 832 (stating that comfortable prisons are not mandated by the Eighth Amendment) (citations omitted); Forbes v. Edgar, 112 F. 3d 262, 267 (7th Cir. 1997)(stating that the Eighth Amendment did not entitle prisoner to demand specific care). In the present case, it is clear that the defendants did not perceive Rowe to be in danger once he was placed and maintain in enhanced administrative segregation. Accordingly, this court finds that the defendants acted in a manner

consistent with their duties and are entitled to qualified immunity, rendering summary judgment appropriate on this basis also.

As the court has granted summary summary judgment in favor of the defendants, there is no basis for Rowe's motion for partial summary judgment, and that motion will be denied.

Conclusion

On the basis of the foregoing, the defendants' motion for summary judgment [DE 70] is hereby GRANTED and Rowe's motion for partial summary judgment [DE 42] is hereby DENIED.

Entered: May 14, 2012.

s/ William C. Lee<br>William C. Lee, Judge<br>United States District Court